I'm Sharon Arkin of Robinson, Kalkagian & Robinson, and I'm a proponent of Douglas Clayhorn. And the breakpoint in this case is whether or not the claims in this case are for recovery of ERISA benefits. And they're not. And under Gregor, Washington Physician Service v. Gregor, a Ninth Circuit decision, and under Kentucky Health Plans v. Miller, a United States Supreme Court decision, that's not what this case is about. But aren't you trying to establish, in essence, an entitlement to automatic coverage for emergency room benefits without regard to the preauthorization requirements, which as I understand it is the buzzsaw that your client ran into when he presented himself at the ER for treatment? No. That, I believe, is a misstatement of what this section requires. You're bringing a class action on behalf of all California citizens who might be covered by this plan. No. Okay. Why don't you explain what your claim is? Maybe I misunderstood the whole point of the case. And that's the distinction. Right. Exactly. That's the distinction. Well, please educate me. This is a police action brought on behalf of the citizens of the state of California. Well, I understand the private attorney general aspect of it. Okay. But what's your claim, counsel? That's my claim. I want an injunction to stop Blue Shield from disobeying this statute, this California statute that regulates the practice of insurance. That's what I want. But what the practice that you want them to stop is requiring some sort of preauthorization for emergency room services, right? No. Actually, what the statute requires is for them to pay for emergency services so long as the patient reasonably believes that they are in a medical emergency. So the patient decides whether or not he's in extremis, not any kind of a health professional? I think it's an objective standard, a reasonable person believing whether or not this is an emergency situation. I don't believe it's a subjective standard that any particular insurer believes that it's an emergency. See, I think it should be an objective standard. But if you win, doesn't that require the plan to have to set aside significantly more reserves in order to pay a much larger number of claims than they're otherwise paying now? All that means is that if it's the second criteria under the Kentucky health plan analysis, that means this law is saved from a risk of preemption. The fact that somebody has to provide coverage that may cost them more only means it affects the risk pool. So that meets the second prong of the Kentucky health plan case, which says it's saved from a risk of preemption, because it's not directed to the plan. It's directed to the insurer, and the insurer is required under Kentucky health plan and under Grigor to follow the State's law. And that's all we're trying to do is to get the HMO, not an ERISA plan, the HMO to follow the law, and under Grigor and under Kentucky health plans, that's not an ERISA case. Well, what about a risk of preemption here? Well, that's what I'm saying. That's critical. That's what I'm saying. This case turns on what kind of case it is. This is not a case seeking ERISA benefits. This is cases just like Grigor where the court held that enforcing a State law against a managed care entity is not subject to ERISA preemption. Now — Mr. Argan, isn't there a difference? In Grigor, as I understand it, the question was whether or not the State legislature in Washington could order a health plan that wanted to do business in Washington to cover, let's say, naturopathic or alternative health care services. Okay? So you can't automatically exclude naturopaths as eligible health care providers. Here it seems to me there's a distinction. You're asking for an injunction that says to the parties who are already authorized to do business under ERISA and State law, you have to pay emergency room claims if the patient believes that when he presented himself at the ER he had an emergency. Without regard, it seems to me, to whether it's a reasonable belief. Without regard to whether there really was a legitimate need for emergency services. And I'm having a hard time understanding, in response to Judge Pregerson's question, why that doesn't bump into a preemption problem with ERISA. Well, your predicate isn't correct because the statute does have a reasonableness requirement that is part of the statutory requirement, that the patient reasonably believe that they have an emergency. So there is a reasonableness requirement. In any event, it wouldn't matter. Because this is a mandated benefit statute, just like Gregor was a mandated benefit statute. Doesn't it all arise out of an ERISA claim? No, it doesn't. This arises out of the State deciding what managed care entities, what kind of care they have to provide. Say there was an ERISA preemption here. Would you be able to raise that issue in a Federal forum? If there is an ERISA preemption? Yeah. Well, sure. But I don't believe there is. Well, but, you know, you already lost before Judge Carter. And so let's just assume there is ERISA preemption. I'd rather not, if that's okay with you. The case disappears if you assume that. Yeah. But let me ask you. If Mr. Cleghorn were a government employee and ERISA didn't apply, what would be the difference? He would still be enforcing the State law against a managed health care plan, not seeking ERISA benefits or any benefits under an employee employment plan. But his only concern, I mean, you're named plaintiff, basically. Who could be anybody? It doesn't have to be an ERISA plan. Well. It doesn't even have to be a blue shield insured under 17-200. But there's no question if your plaintiff benefits from this injunction, it affects his reimbursement under an ERISA plan, does it? And it affects the reimbursement of people who aren't subject to ERISA preemption as well. Yeah. And that's the whole point. It's not enforcing ERISA. It's enforcing State law. And that's the key distinction that Kentucky Health Plan made and that Greg Rohr made. Kentucky Health Plan is a U.S. Supreme Court decision. It says you can enforce State law against HMOs, even if it would otherwise impact ERISA plans that buy from that HMO. That's the distinction. And that's what we're trying to enforce here. We're not trying to get ERISA benefits. We're trying to enforce the State law. Okay. We got it. Okay. Can I reserve the rest of my time for rebuttal? Thank you. What's the difference between this case and the Washington case, Greg Rohr? The cases, Your Honor, are completely different. There are two lines. There are two basic lines of ERISA preemption. There are cases that concern regulatory statutes that have an impact on ERISA plan. And those cases, including Greg Rohr, including the Kentucky Association case, including the Travelers and De Buono cases, those cases basically look at whether the State statute has a sufficient impact on an ERISA plan, even though it may be a statute of general applicability, such that it's impermissibly regulating an ERISA plan under Section 514, preemption of ERISA. That's not this case. Blue Shield is not arguing that the Health and Safety Code Section 1371.4 is preempted under 514 because it has an impact on an ERISA plan. This is a 502 preemption case. This is a case that deals with the preemption under Section 502 of ERISA, which preempts any alternative enforcement remedies here. And the issue here is not whether Section 1371.4 somehow impacts an ERISA plan. This is a completely separate case. This is a situation that is a pilot life, originally a pilot life, and most recently a DABLA. The Ninth Circuit has addressed 502 preemption issues in Bast and in a variety of other cases. The question here has nothing to do with whether the Health and Safety Code can be applied to Blue Shield when acting in its capacity as an ERISA plan. The question is whether a litigant, when seeking to enforce remedies against his ERISA plan And here it's not merely injunction. Here the CLRA claim, the Consumer Legal Remedies Act claim, seeks punitive damages. Restitution is sought here as well. A disgorgement of profits. This is not an injunction case. Kennedy. In your view, then, it's no particular reason why this Health and Safety Code provision doesn't apply now to Blue Cross Blue Shield. Absolutely. Blue Shield is not arguing here. Blue Shield could have brought, potentially, could have brought a different type of preemption argument under Section 514 and asserted that as, that when acting in its capacity as an ERISA plan, the California regulation doesn't apply because it impermissibly impacts an ERISA plan. That's not the argument that was brought. The argument that was brought is that if this litigant wishes to enforce a claim against his ERISA plan, he needs to do it under the exclusive enforcement remedies available under Section 502 and ERISA. This is an enforcement case. Gregoire was not an enforcement case. Davila, for example, the most recent Supreme Court pronouncement on 502 enforcement issues was an enforcement case. In Davila, the plaintiffs sought using the Texas health care liability statute to impose statutory tort claims on an ERISA plan as an alternative to ERISA's exclusive enforcement remedial scheme. And the Supreme Court very clearly said there that you cannot do that. Now, the argument that Mr. Claighorn asserts that this is not an ERISA case because it does not concern, he's not seeking ERISA benefits is irrelevant. The Supreme Court in Davila and this circuit in a number of different cases have held very clearly that the whole point of ERISA preemption is that an individual who is in an ERISA-governed relationship cannot seek remedies that are not available under ERISA. So, for example, in Davila, when punitive damages were sought or when tort damages were sought, the argument was exactly in that case. Look, we're not seeking ERISA benefits. And the Supreme Court said, well, that's the point of ERISA preemption, 502 preemption. You cannot use State enforcement vehicles like State statutory tort law or like the kind of damages unavailable under ERISA. You simply can't use State remedies that are alternative to ERISA and then claim that it's not an ERISA case. Now, your argument wouldn't be available if the plaintiff were somebody who, let's say, had purchased Blue Cross Blue Shield insurance totally outside of an ERISA plan. If the – that clearly is not this case. But in such a – Well, you'll tell me in a minute why it isn't. Right. And I'll get to there. The – here, the touchstone here is the plaintiff in this case is in an ERISA-governed relationship. And that – this Court said in the Bass case and in the Fortas v. Elliot case is the governing issue, that one looks to the relationship between the plaintiff and the plan to see whether there is an ERISA-governed relationship. Hypothetically, if there were a plaintiff who were not in an ERISA-governed relationship, seeking remedies against a health plan, not acting in its capacity as an ERISA plan, then you don't get to – then you don't get to ERISA issues unless that person is also seeking to enforce ERISA-type claims against an ERISA plan through some – through some mechanism, for example, class action mechanism. Now, what's important to note here is that each of the claims that are pleaded in this case, there are three causes of action, two under the UCL and one under the CLRA, the Consumer Legal Remedies Act. In each of those claims, Mr. Cleghorn is pleading a class action. In his CLRA claim, he's pleading a class action under the CLRA class action procedures. And under his UCL claims, he is also pleading a class action under each of those claims under California's regular class actions statute, CCP 382. And under each of those class action requirements for all three causes of action that Judge Carter was dealing with below, Mr. Cleghorn would have to show typicality. And he is not typical, as we've explained in our briefing, because he himself does not have any claim outside of ERISA. And so he cannot, therefore, seek to represent the class of people, whether a UCL class or a class under the CLRA, for other – for other persons who have claims that are different than his. Didn't the – I thought the district court dismissed this on a 12B motion. Yes, it did.  No, but it was a 12B motion. The district court has never passed on this factual mixed question of law and fact, has it? Well, the question that I was positing is not a mixed question of fact. If one looks at the – one doesn't have to go past the complaint. Well, let me ask the question in a different way. Judge Carter didn't decide that Mr. Cleghorn could not be an adequate representative of the class because he dismissed the case on preemption grounds, right? Yes. Yes. You're making an argument to us that you never made to the district court because you didn't need to make the argument. We didn't need to make the argument in the district court. What I would say, as the Court is well aware, is the Court can affirm on any grounds supported by the record, and the record includes the complaint. The complaint has three paragraphs in there, one in each of the causes of action pleading a class action, both under each UCL claim as well as the CLRA claim, and specifying very clearly that on the UCL claim it is seeking to certify a class action under Section 382 of the California Code of Civil Procedure. So the question of typicality arises in each of the three causes of action, and it is clear that Mr. Cleghorn cannot be a typical plaintiff given that his claims are plainly preempted under RISA. Now, what I'd like to do, if I could, is come back to the Gregoire point, because this is a critical, critical point. This case, the question is not whether the health and safety code provision, this ER statute, applies to insurance. This is not a savings clause issue. It would be a savings clause issue if the question, if Blue Shield were seeking to say that the insurance code or the health and safety code could not be applied to it. That's not the argument in this case. The appropriate focus is not on the health and safety code provision, not on the ER statute, but on the causes of action, the enforcement vehicle that the plaintiff is seeking to use here. So the question is, is the Consumer Legal Remedies Act or is the UCL an appropriate enforcement vehicle to bring a claim against an ERISA claim? And the answer is, the answer clearly is no. Those are State causes of action alternative to ERISA. The Court asked the question of Ms. Arkin whether this kind of claim could be brought under ERISA. And I would point out that under ERISA, Mr. Cleghorn had the option of seeking injunctive relief. He had the option of seeking to enforce rights under the plan. He had the option of any equitable relief that the Court would deem appropriate under ERISA. And he also had the option of a class action. So this is not a situation as in Bast where this Court found ERISA preemption based on the plaintiff seeking to use an alternative enforcement scheme. And in that case in Bast, the Court recognized that as a result of its ruling, the plaintiff was going to have no claim. And that was, I believe, a death case. And the Court struggled with the issue, struggled with what it believed was the ERISA's 502 preemption, the alternative enforcement scheme preemption, was so powerful and the plaintiff was so obviously seeking to use a non-ERISA enforcement mechanism, but the Court had no choice. This is not that kind of case. The last point I'd like to raise with the Court, obviously in addition to any other questions the Court may have, is what the plaintiff had just said. If the plaintiff had gone through the ERISA process merely to have his own emergency room payment reimbursed or whatever, that that could be handled that way. Absolutely. And he'd get his money. Absolutely. Absolutely. Well, he'd get his money after he made out his reasonableness of his beliefs. Obviously, there would have to be merit. Legitimate, you know. Yeah, there would have to be merit. A lot of times people call a doctor's office and, you know, there's an emergency and they've got bad nosebleed and the doctor's not around and they just, they tell you, you know, if there's a, if it's an emergency, you know, you can call 911 or you can go to an emergency room. Yes. And, in fact, what the Supreme Court said is that. That doesn't mean they're going to take care of you there. They should plead to death first. What the Supreme Court said in the Dabla case, in fact, was that, for example, the litigant in that case could have done just that. Dabla, like this case, was a situation where the basic complaint, the essential complaint, was a denial of benefits. And here, contrary to, or the labels that are being placed on this, ultimately, the touchstone of the claim here is a denial of benefits. And in order to adjudicate this claim, one needs to look at the terms of the plan to see whether the plan applies. Mr. Cleghorn's entitlement to emergency room benefits arise because of his plan terms and the coverage of the plan, exactly like in Dabla, where the entitlement in Dabla was as well. It was a denial of treatment situation. And the Supreme Court in Dabla said because the relationship, because the entitlement that is being sought is there because of the coverage under the plan, it arises under the plan, even though the label that was sought to be put on the claim in Dabla was not a claim for benefits. It was a tort claim. So, to make sure I understand your point, if Mr. Cleghorn had been suffering from bone cancer and wanted to get a $200,000 bone marrow transplant procedure approved, there would have been a provision in the plan by which he could have sought to get coverage for that. They might or might not have covered it. But instead, what he has essentially done here is he's invoked these state enforcement remedies and just filed suit against the plan to force them to cover a service that the plan might or might not cover. Is that a fair analogy? That's exactly the case. This situation, while the label that is being placed on this is compelling Blue Shield to comply with state law, the issue is exactly the same issue. This is no different than any other denial of benefits case where the plaintiff is claiming that through whatever enforcement vehicle ERISA would allow him, that the plan should be required to pay for the treatment, either based on the terms of the plan or that the terms of the plan were somehow defective because they didn't comply with some other law. That's all he's claiming. But the basic question is whether Blue Shield improperly denied Mr. Cleghorn or other people benefits under their plan under this health and safety code provision. And the question for the Court is, is can he maintain such a claim? We aren't saying that that claim shouldn't be litigated, but the question is in what form should it be litigated and through what enforcement remedies should it be litigated. And what is absolutely clear based on DABLA is that if Mr. Cleghorn wishes to maintain this claim, he needs to do it under the exclusive remedial scheme set forth in ERISA's section 502. And that is why this is not a Gregoire case. Gregoire was not an enforcement case. It didn't even discuss section 502. It didn't discuss pilot life. It didn't discuss the Bass case or any of the other cases in this circuit. The Fortas v. Elliott wasn't decided at that point, but the Cann case that I believe Judge Pragerson was on the panel for in that case. The Kennedy case, which I believe you were on the panel for, it didn't discuss any of those cases because Gregoire was not a civil enforcement case. It wasn't a 502 case. And this case does not involve a question whether Blue Shield should be bound by California regulatory law. The question is if there is a claim that Blue Shield breached a provision or that its plan terms were defective or that it didn't follow its plan terms, what is the means by which that claim should be enforced? And it needs to be enforced under ERISA. And you're not denying that this particular claim that involves emergency room service would fall within the ambit of the ERISA plan? The other way perhaps, Your Honor, that I would put this, I think I understand your question. Yes, Blue Shield would not deny that there are provisions in the benefit plan that cover ER services and that if a member legitimately seeks emergency care services that they need to be paid for. Absolutely. We are not disputing that that is a portion, a part of the plan. And, in fact, what we are saying is that because Mr. Clayporn's entitlement to be covered for emergency services depends on his plan, that therefore there is a reason for the claim to arise under the plan, which was the issue, again, that the Court addressed in Davila, that, I believe, as the Court put it. But an applicable State statutory provision, are you saying doesn't apply to the plan? No. What we are saying is I suppose there is a hypothetical challenge that Blue Shield could have brought, questioning whether when it is acting in a capacity as an ERISA plan, whether the State regulatory scheme unduly impacts Blue Shield in its capacity as an ERISA plan. And if Blue Shield had brought that kind of challenge, that would be more like a Gregoire situation. We didn't, but we didn't bring that challenge. Let me just ask you a simple question. The California provision does apply to the plan, yes. And we are not challenging that. All right. And we are not challenging that. What we are saying is that if that, if there is an enforcement action brought to seek compliance or to determine whether Blue Shield should be covering services under the terms of its plan, that kind of enforcement action needs to be brought under ERISA. You don't like the class action aspects of this. Well, there is, if there is an appropriate class action, then that can be brought under ERISA as well. ERISA has class action procedures as well. What we are saying is that when the plaintiff seeks, as he is doing here in his CLRA claim, punitive damages under the CLRA or restitution or disgorgement or other types of remedies under the State statutes, what he needs to do is to seek the kinds of remedies that are available under ERISA. And ERISA does provide for injunctive relief. It does provide inappropriate cases for equitable restitution or for other equitable relief. It does not provide for punitive damages as sought under the CLRA, which is, for example, the exact reason that in Dablon and Pilot Life and all the other cases where punitive damages were sought against an ERISA plan, the Court said you can't do it. ERISA doesn't provide for it. You're limited to what ERISA does provide, and you can't do an end run around Section 502 by trying to label your claim as being not for ERISA benefits. Okay. Well, listen, we've given you 7 minutes and 42 seconds beyond your coverage. I appreciate that, Your Honor. Thank you very much. Is that within the terms of the plan? No, that was, I believe, in a rider that the Court issued before the argument started. Thank you. Thank you, counsel. Well, Ms. Arkin, you were vigorously shaking your head, and I want to hear your response to my bone marrow transplant hypothetical. Well, let's clear out some of the underbrush here. Can you just tell me what's wrong with my hypothetical? We're not seeking benefits. We are not seeking benefits in this case. Well, he, what started this whole thing was he went to the ER and they wouldn't pay the claim. And that's evidence of the fact that Blue Shield violates 1371.4. They're not complying with State law. How is that different from him having bone cancer and wanting them to cover a bone marrow transplant that they won't cover? And then he sues them under the CLRA on behalf of all plaintiffs who suffer from bone cancer who want bone marrow transplants. Okay. This Court has the obligation of determining whether each claim and each cause of action is preempted by ERISA. So even if you want to say the CLRA claim is preempted by ERISA, okay, that's gone. If you want to say the class action claims under the UCL are preempted by ERISA, okay, that's gone. But you can't say that the UCL injunctive relief claim is preempted by ERISA, and let's just focus on that. That's Gregor, that's Kentucky Health Plans. Because under Gregor and under Kentucky Health Plans, a State statute that mandates the obligations of a health care plan, not an ERISA plan, but an HMO that sells a product to an ERISA plan, if that State statute regulates how the health care plan has to conduct its business, that statute is enforceable against the health care plan and is not preempted by ERISA. Not preempted. That's what Kentucky Health Plans says. But your injunction essentially say in so many words the plan's coverage terms must be reinterpreted or rewritten to conform with the California statute. No. It doesn't say that. What the injunctive relief action says is Blue Shield must obey 1371.4. But I don't understand how that's any different from telling the insured, insurer, excuse me, that you have to rewrite the terms of coverage in order to comport with California law. Because the duty of the health plan exists independent of the terms of the plan. So we are not suing to enforce the terms of the plan. We are suing to enforce California law just like in Gregor and just like in Kentucky Health Plans. And I really, I urge the Court to reread those two cases in light of that, a UCL action, a police enforcement action against an HMO to require it to follow California law. Not a claim for benefits. Let me ask the reverse of the question, then. What is it that you think Section 502 of ERISA preempts if it isn't an attempt to rewrite the provisions of the plan and the benefits that they afford the plan participants? Well, Section 502 preempts individual actions for plan benefits against an ERISA plan. This is an injunctive, a police action seeking injunctive relief against an HMO, not a plan. An HMO that sells its product to ERISA plans. I think we hear your, I mean, you're doing a great job, you know, making the technical legal argument. But I keep coming back to the net result is that the plan is being told you've got to pay these claims that under the provisions of the plan it may or may not have an obligation to pay. Just like in Gregor, the Court was saying you have an obligation to provide homeopathic treatment to patients, irrespective of the plan. The Gregor case had a great analogy. If the plan says we're going to give you an apple a day or we're going to give you a gym membership, that doesn't mean the State's no longer able to regulate apples or gyms. That's the same thing. They're selling a product to ERISA plans. Whether they sell it to an ERISA plan or a non-ERISA plan, and there are non-ERISA plans at issue in this case, and they can't be preempted. Under UCL injunctive relief claim, those can't be preempted. Even if the injunction only goes to non-ERISA claims, that can't be preempted. It does get maybe to a typicality thing, because when you get this injunction that you're asking for, if we said you were entitled to it, your plaintiff enforces it by going to an emergency room, being denied benefits, and then going to district court saying, order the benefits to be paid. That's what this case is. That's our problem. Let me ask you this. I thought, I mean, you're wonderful. You remind me of one of my high school teachers. No, no. I mean, you'd be good because you got a lot of energy. And but I'm dying to see how he's going to end this sentence. You get a laugh without even having to do anything. But Mr. Pemstone told us that these provisions of state law, at least what I understood, are part of the ERISA plan. I mean, that's what he said. Right. But if you want to enforce 1371.4, you've got to go through the ERISA procedure. Isn't that what he said? That's what he said. He's wrong. Because under Gregor and under Kentucky Health Plan, state laws regulating insurance can be enforced without ERISA preemption. If I were, if Mr. Cleghorn had never been a Blue Shield insured, he could still bring the 17200 action. Prior to Prop 64, when this case was filed, he had standing to bring the UCL injunctive relief action even if he'd never been a Blue Shield insured. So ERISA couldn't be implicated. It wasn't him going to the emergency room. The evidence or the allegations in the complaint about him going to the emergency room relate to the evidence demonstrating their violation of the statute. It's not a claim for the benefits. Now, what if, how do you deal with, I believe the position of Blue Cross is that, well, yeah, that state regulation does apply to us. And when they violate it, they, a police action can be brought to enjoin them from continuing to inviolate it, from continuing to engage in conduct in violation of that state statute. Well, then why can't you get damages, too? Huh? Then why can't you get damages, too? Because I don't want this to be preempted by ERISA. And that's the segmentation you have to look at. It's not all or nothing. The UCL, the 17200 claim for injunctive relief to enforce this statute against an entity that sells its product to ERISA plans. It's not an ERISA plan. Blue Shield is not an ERISA plan. It's an HMO that sells its product to ERISA plans. It can be failed to comply. But even if the 17200 UCL injunction related only to non-ERISA plans, you have to let this case go forward and you have to remand it to the superior court, because that part of this case can't be, even under Mr. Pimstone's analysis, cannot be preempted by ERISA, because there are non-ERISA beneficiaries of plans that are not subject to ERISA preemption, that this State is entitled to enforce injunctive relief against Blue Shield to comply with California law. That's the bottom line. Kennedy. That's the question, is whether we can really divorce your named plaintiff from the ---- He doesn't have to be a Blue Shield beneficiary to bring that case. So it doesn't matter who he is. Well, he'd have to be a Blue Shield beneficiary. He doesn't have to be an ERISA beneficiary. No, not under the UCL. He did not ever ---- Oh, I see. He never had to be a Blue Shield. Public attorney general, okay. Exactly. That's exactly what this is. He's a private attorney general bringing a police action to enforce State law. He's not an ERISA beneficiary. And I'll say it right out. We've waived any claim for ERISA benefits. We ---- Judge Carter offered us the opportunity to amend to seek ERISA benefits. We declined to do that. We are not seeking ERISA benefits. And I'll say that clear, flat out. We're seeking injunctive relief under the UCL to enforce State law and require this business entity to comply with the law that regulates it. Is he willing to waive punitive damages? I'm sorry? Is he willing to waive punitive damages? Yes. I'm telling you we'll waive the CLRA claim. We'll even waive class action under the UCL. But injunctive relief under the UCL is an enforcement action that cannot be preempted by ERISA under Gregor and under Kentucky Health Plans. It's not preempted. That's what those cases say. If the statute's not preempted, then we can enforce it under a police action under the UCL. And even if it were preempted by ---- in certain plans, it can't be preempted in non-ERISA plans. We're entitled to that injunction no matter what, ERISA or no. But you could get the same result by following the ERISA result, the path. Right. And if you had a non-ERISA plaintiff, you'd get the same result. Right. So you need another client. But that doesn't absolve this part of the responsibility of enforcing the law appropriately with the client I have. Well. I mean, that's the bottom line. I mean, is there evidence of a history of Blue Cross not complying with the statute? Well, since I never got to do discovery, I don't know that yet. Well, we know your plaintiff claims that. And under the UCL, a single violation is all you need. Obviously, I want to do discovery and find out if there are more. Okay. You're getting scary now. Oh, no. Just like the high school teacher. Your client is an ERISA beneficiary. But this isn't an ERISA claim. That's the distinction. Well, it started that way. See, the defense has characterized it as an ERISA claim. They have taken my complaint and recharacterized it to something it's not. That's the problem. Well, the complaints evolved even during this argument. As I think they have before. But I'm saying, even if I didn't waive the CLRA, I didn't waive the class action, the point is you as a court have an obligation to look at the claims individually to see if they're preempted. You can't just say it's all preempted when, in fact, parts of it are not. And that's the problem. Would we have jurisdiction as to the non-ERISA claim? No. That's why it has to be remanded. Because it was Blue Shield who removed it from Orange County Superior Court? Yes, sir. All right. So you can make it all go away as far as the fair court is concerned. We're always looking for business. I understand. No, we're always looking for business. I know, because you mostly just sit around twiddling your thumbs. There's nothing to do, right? Absolutely. That's it. Thank you very much for that. And I really beg you to desegment the case. You have to. At least you kept us awake. Well, that's a good thing in the dark and everything. I know. Thank you, gentlemen. I appreciate it. Thank you, Kathleen. Thank you. I take it, Your Honor, there were a few new arguments like the waiver argument and the reformation complaint argument raised. I take it you don't want me to address those? I'm happy to address those. I'm happy to leave. But there were some new issues raised, and I'm at the court's pleasure on those. Well, I think you're okay. You don't want me to do more. I don't need any further argument. I think it was very well argued. No, thank you both. It was a very helpful argument. It was fun. All right. We'll take the next matter. It's Julian.
judges: Pregerson, Canby, Tallman